# NEBRASKA v. IOWA

No. 17, Orig.   Decided April 24, 1972—Decided
and Decree entered January 8, 1973

PER CURIAM and DECREE.

The Special Master, as directed in *Nebraska* v. *Iowa,*
406 U. S. 117, 127 (1972), has submitted a proposed
Decree.   Nebraska accepts it but Iowa filed five Ex-
ceptions, to which Nebraska replied.   Upon considera-
tion of the Exceptions in light of our opinion and the
Report of the Special Master, Iowa's Exceptions II and
III are overruled and Exceptions I, IV, and V are sus-
tained insofar as paragraphs 11 and 12 of the Proposed
Decree are revised in the following Decree, the entry of
which is directed:

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1. The Missouri River was the boundary between
the States of Iowa and Nebraska which was subject to
the general rules of accretion and avulsion until 1943
when the states determined to agree by compact upon
a permanent location of the boundary line.

2. By 1943 the shifts of the Missouri River chan-
nel had been so numerous and intricate, both in its
natural state and as a result of the work of the Corps
of Engineers, that it was practically impossible to
locate the original boundary line between the states.

3. The Compact between the states effective July 12,
1943, provides in Section 3 as adopted by Iowa:

"Titles, mortgages and other liens good in Nebraska
shall be good in Iowa as to any lands Nebraska may
cede to Iowa and any pending suits or actions con-
cerning said lands may be prosecuted to final judg-

ment in Nebraska and such judgment shall be accorded full force and effect in Iowa."

4. Under Section 2 of the Compact, each state "cedes" to the other state "and relinquishes jurisdiction over" all such lands then located within the compact boundary of the other.

The word "cedes" in Section 2 was meant by the states to describe all areas formed before July 12, 1943, regardless of their location with reference to the original boundary, whose "titles, mortgages and other liens" were, at the date of the Compact, "good in" the ceding state. Under Section 3, the state is bound to recognize such "titles, mortgages and other liens" to be "good in" its state, and not to claim ownership in itself.

5. Sections 2 and and 3 are not to be construed as relating only to areas formed before July 12, 1943, that can be proved by clear, satisfactory, and convincing evidence to have been on the Nebraska side of the *original* boundary before the Compact fixed the permanent boundary. Such a construction would require the claimant who proves title "good in Nebraska" also to shoulder the burden of proving the location of the *original* boundary before 1943, as well as proving that the lands were on the Nebraska side of that boundary which would be placing a burden upon the land owner which the states themselves refused to undertake in 1943 and agreed would not be necessary.

6. The State of Iowa does not own Nottleman Island and Schemmel Island. The proofs sufficed to establish title "good in Nebraska" to Nottleman Island which was the land involved in the case of *State of Iowa, Plaintiff, v. Darwin Merritt Babbitt, et al.,* Equity No. 17433 in the District Court for Mills County, Iowa, and to Schemmel Island which was the land involved in the case of *State of Iowa, Plaintiff, v. Henry E. Schemmel, et al., Defendants,* Equity No. 19765 filed in the District

Court of Fremont County, Iowa, on March 26, 1963, and that Nottleman Island and Schemmel Island formed before July 12, 1943.

7. Under Section 3 of the Compact, titles "good in Nebraska" include private titles to riparian lands that under Nebraska law, differing from Iowa law, run to the thread of the contiguous stream.

8. Titles "good in Nebraska" are found to include and embrace titles obtained by ten years' open, notorious and adverse possession under claim of right without any requirement of a record title or of "color of title."

9. As to areas formed before July 12, 1943, Sections 2 and 3 of the Compact limit the State of Iowa to contesting with private litigants in State or Federal Courts the question whether the private claimants can prove title "good in Nebraska" and when private litigants prove such title, Iowa cannot interpose Iowa's doctrine of state ownership as defeating such title.

10. In the presently pending cases of *State of Iowa, Plaintiff v. Darwin Merritt Babbitt, et al.,* Equity No. 17433, (District Court of Mills County, Iowa), and *State of Iowa, Plaintiff v. Henry E. Schemmel, et al.,* Equity No. 19765, (District Court of Fremont County, Iowa), it having been proved that there are titles "good in Nebraska" as to those islands, there is no reason for an injunction against Iowa, its officers, agents and servants, at this stage, unless it be shown that the State of Iowa will not abide by this determination of the issues as embodied in our opinion of April 24, 1972.

11. Generally, ownership of the twenty-one areas and part of the twenty-second area north of Omaha—claimed by Iowa to be state owned by Iowa because allegedly formed wholly on the Iowa side of the Compact boundary after the Compact date—shall be determined by the law of the state in which they are found to have formed, the Compact boundary being the line which shall determine

in which state they formed. Claimants of title to these areas as against Iowa may have the opportunity to show title "good in Nebraska" on the Compact date.

12. Although under the Nebraska law of accretion private titles to riparian lands run to the thread of the contiguous stream, whether a Nebraska riparian owner has title to the accretions that cross the boundary into Iowa is determined by Iowa law.

13. The counterclaim of Iowa is dismissed.

14. The parties having paid their own costs and having contributed equally to a fund for expenses of the Special Master, any amounts remaining in said fund after deduction of all expenses by the Special Master shall be divided equally and returned to each state by the Special Master.

*It is so ordered.*